**In re HASTINGS MARINE CORPORATION, d/b/a Coast Marine, Debtor.**

**Bankruptcy No. 88–06612–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 24, 1989.

Jeffrey W. Warren, Tampa, Fla., for debtor.

Brian Burden, Tampa, Fla., for Magic Tilt Trailers, Inc.

## ORDER ON MAGIC TILT TRAILERS' MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing upon a Motion for Relief from Stay filed by Magic Tilt Trailers, Inc. (Magic Tilt). Magic Tilt seeks an order from this Court granting a relief from the automatic stay in order to recover certain properties currently in possession of Hastings Marine Corporation (Debtor) involved in the above-captioned Chapter 11 case. The Motion is based on the contention of Magic Tilt's claim for relief on the basis that the trailers which are in the Debtor's possession are not property of the estate, having been placed with the Debtor on a consignment basis. Alternatively, Magic Tilt seeks an order requiring the Debtor to make adequate protection payments on the basis that Magic Tilt holds a perfected security interest in the trailers, which interest is not being adequately protected. In opposition to the Motion to Lift Stay, the Debtor contends that Magic Tilt never entered into a consignment agreement with the Debtor, and that, therefore, the trailers are property of the estate and are protected by the provisions of § 362 of the Bankruptcy Code. In opposition to Magic Tilt's alternative contention that it holds a perfected security interest in the trailers, the Debtor contends that first, Magic Tilt never ac-

quired any security interest in the trailers as the parties never entered into a Security Agreement, and, second, even if Magic Tilt held a security interest in the trailers it never was protected because Magic Tilt did not file a UCC–1 with the Secretary of State of the State of Florida indicating that Magic Tilt had a security interest in the trailers. Based on the foregoing, it is the Debtor's contention that Magic Tilt does not have a security interest in the trailers which would be entitled to protection. The Court has considered the Motion, the respective contentions of counsel, and now finds the relevant facts established at the hearing on the Motion to Lift the Stay to be as follows:

■ Magic Tilt is a manufacturer of trailers, which it supplies to various business entities. In this specific instance, Magic Tilt placed its trailers in the possession of the Debtor, who is in the business of selling recreational boats. It appears that upon delivery of the trailer to the Debtor, the Debtor signed a document carrying the letterhead, "Magic Tilt Trailer". The document (Debtor's Exh. A) appears to be an invoice which indicates the model number, the size, the serial number of the trailers and the cost of each trailer. The invoice also contains the language at the bottom of it which reads as follows:

> Goods sold and delivered to the purchaser named herein shall remain the property of the vendor, Magic Tilt Trailers until the specified purchase price is paid in full. Open terms EOM 10th. Full legal rate of interest will be charged on all past due invoices.

It is Magic Tilt's contention that the language contained on the bottom of the invoice is equivalent to a consignment agreement.

Fla.Stat. § 672.201 governs written consignment agreements. This section provides that for a consignment agreement to be binding, it must be written and signed by the contingence.

There is nothing in this record to establish a written consignment agreement. The only documentary evidence evidencing the nature of the transaction between the Debtor and Magic Tilt is a routine commercial invoice commonly used in sales on open account. While it is true that the legend at the bottom of the invoice described earlier indicates an intention by Magic Tilt to retain title to the goods sold to the Debtor until the goods are paid for, this is certainly not tantamount to or the legal equivalent of a written consignment agreement. Even assuming, but not admitting, that the legend referred to may operate as an effective tool to convert a commercial invoice into an consignment agreement, such agreement can only be valid against creditors of the so-called consignee unless the person making delivery complies with the provisions of § 672.326(3) of the Florida Statutes which provides that the consignor

> "(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign or
>
> (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
>
> (c) complies with the filing provisions of the chapter on secured transactions (Chapter 679)."

There is nothing in this record to show that Magic Tilt complied with the applicable law providing for a consignor's interest evidenced by a sign, or with the alternative available to a consignor under subclause (a) of § 672.326(3) Fla.Stat.

This leaves for consideration whether or not Magic Tilt has established a compliance with the criteria set forth in either § 672.326(3)(b) or (c).

First, it is without serious dispute that the Debtor was not generally known by its creditors to be substantially engaged in the sale of goods of others held by the Debtor on consignment.

Next, subclause (c) permits consignor as an alternative to protect its interest by complying with the provisions of Article 9 of the Uniform Commercial Code as adopted in this State (Section 679.9–101—*et seq.*). Under this statute in order to have a valid enforceable security interest, there must be a validly created security interest

by the execution of a Security Agreement. The Agreement must be in writing; must be signed by the debtor and the secured party; must include a granting clause, that is, statement that the debtor intends to create a security interest; and must adequately describe the collateral covered by the Security Agreement. § 679.9–203(1)(b) of the Florida Statutes.

Next, it is equally beyond dispute that before a validly created security interest can be enforced against a third party, with some exceptions not relevant here, it must be perfected by filing a financing statement (UCC–1) with the office of the Secretary of State of Florida. § 679.301 of the Florida Statutes.

 It is undisputed that Magic Tilt and the Debtor never entered into a Security Agreement as such with respect to the trailers nor did Magic Tilt ever file a financing statement with the office of the Secretary of State of Florida. Notwithstanding, Magic Tilt urges that its retention of its manufacturer's statement of origin (MSO) somehow effectively created and perfected its security interest in the trailers. This contention is based on the proposition that the perfection of interests in trailers are governed by the provisions of Chapter 319 Florida Statutes governing title certificates. *Florida Department of Corrections v. Blount Pontiac–GMC, Inc.*, 411 So.2d 930 (Fla. 1st DCA 1982). Based on this, Magic Tilt contends that certificates of title to the trailers can not be obtained by a potential purchaser until Magic Tilt submits its MSO with the application for a certificate of title to be issued by the State of Florida Registration. However, counsel for Magic Tilt now concedes that boat trailers of the type in the possession of the Debtor are not governed by the provisions of Florida Statutes ch. 319. Therefore, this Court is satisfied that Magic Tilt does not possess a security interest in the trailers by virtue of its retention of the MSO's.

Based on the foregoing, this Court is satisfied that Magic Tilt does not hold a perfected security interest in the trailers and if anything, only holds an unperfected security interest in the same. Accordingly, this Court is satisfied that Magic Tilt's Motion for Relief from Stay or Alternatively for Adequate Protection, should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Magic Tilt's Motion for Relief from Stay and Alternatively for Adequate Protection be, and the same is hereby, denied.

DONE AND ORDERED.